Succession of Boullemet.

No. 9946.

SUCCESSION OF R. H. BOULLEMET.—RULE ON THE LOUISIANA STATE LOTTERY COMPANY.

The surviving parent, holding property in common with minor children of a marriage with the deceased spouse, whether of the late community or derived by testament, may cause same to be adjudicated to him, or her, in whole or part, at an estimation of value fixed by experts appointed and sworn by the judge, after a family meeting shall have declared that such adjudication is for the minor's interest and advantage, and their under tutor shall have given his consent thereto.

A judicial adjudication of property thus held in common will not be annulled for *informalities* anterior to the decree of adjudication. Such decree is conclusive as to the facts on which it rests, *until corrected on appeal*, or annulled in a direct action.

When, as in this case, the property sought to be adjudicated to the surviving spouse is shares of stock of a corporation, and a rule is taken on such corporation to sho ' cause why the stock should not be transferred on the books of the corporation, in conformity with the decree of adjudication, the answer of the corporation thereto, presents an issue that must be decided as a necessary step to the completion of the adjudication. On appeal taken from the decision of the judge *a quo*, on the rule, we may decide upon the regularity of the anterior proceedings, and whether the consummation of same would be to the best interest and evident advantage of the minors.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

*Joseph H. Spearing,* for Plaintiff and Appellant.

*T. J. Semmes & Legendre* and *Hornor & Lee,* for Defendant and Appellee.

The opinion of the Court was delivered by

WATKINS, J. R. H. Boullemet died on the 12th day of February, 1886, leaving a widow and two minor children, to each of whom he beqeathed one-third of his estate.

The widow caused the will to be probated, an inventory to be taken, and herself to be qualified as testamentary executrix. Thereafter she was qualified and confirmed natural tutrix for the minors, and had an abstract of the inventory recorded in the book of mortgages, and H. P. Buckley, grandfather of the minors, was appointed and qualified as their undertutor. On the 20th of December, 1886, the executrix filed an account, showing the liquidation and settlement of succession debts and charges, and, on due proceedings had, procured the homologation thereof.

In her capacity of natural tutrix, Mrs. Boullemet filed, subsequently, an account on which was carried the value of 108 shares of stock of the Louisiana State Lottery Company fixed at $16,200, i. e., $150 per share; and the total amount of assets for distribution at $20,494 14.

On that basis the respective shares of the widow and heirs were fixed at $6831 38—that is to say, $13,662 76 for the two minors. The undertutor having been cited, filed an answer, in which he acknowledged the account to be correct, and consented to the liquidation and fixing of the shares of the minors at the amounts stated. Thereupon the account was homologated. Mrs. Boullemet then filed a petition requesting the convocation of a family meeting to advise whether it was to the best interest and evident advantage of the minors, that the property held in common by her children and herself should be adjudicated to her, upon the execution and registry of an adequate special mortgage in their favor. The proper order was made, and experts appointed. They reported in favor of the adjudication being made at the price of $13,662 76, as fixed in the inventory. This report was duly approved and homologated.

The family meeting was duly convened, and recommended the adjudication to the surviving widow, of all the property that is described in the inventory, at the price of $13,662 76 for the share of the two minors, upon her executing an adequate special mortgage in lieu of the general mortgage, in their favor. In these recommendations the undertutor concurred, and the same were duly homologated; and the special mortgage was accepted, and the cancellation of the general mortgage ordered.

Mrs. Boullemet procured an order directing the Lottery Company to show cause why the judgment adjudicating to her the shares of stock, the deceased held and owned, should not be complied with, and the same duly transferred to her upon the books of the company, and new certificates of stock issued to her in its place.

In answer to the rule, the Lottery Company assigns as a reason why the transfer should not be made that, in their opinion, " an apparent wrong was being committed to the prejudice of the minors, without the knowledge of the court, in that the appraisement of the property of the succession, was much less than the officers of the company knew to be the amount of the interest of the children in the capital stock of their father in said company ; and, therefore, said officers believed it to be their duty to make an investigation of the proceedings," etc.   The answer then declares that their investigation led to the discovery that said stock was worth, at the date of those proceedings, $500 per share, " and for this reason, and from the fact that the officers are advised that they might be held liable to said minors if they transferred the stock in obedience to the judgment of the court, with-

out bringing to the notice of the court the true market value of said stock."

To this answer are annexed the affidavits of two stockbrokers of this city, stating the value of this Lottery stock to have been "upwards of $500 per share," and it contains an offer on the part of the company " to take the whole of said stock at the price of $500 per share, payable cash."

On the trial of the rule no other evidence was offered than the record and proceedings referred to on the part of plaintiff in the rule, and the two affidavits on the part of the Lottery Company. To the introduction of these the plaintiff objected on the following grounds, viz :

1st. That said judgment and proceedings cannot be attacked collaterally.

2d. That said judgment and proceedings fixed the value of the property to be adjudicated.

3d. That said affidavits are irrelevant.

4th. That the Lottery Company is without interest.

5th. That the minors are the only interested parties.

6th. That only the undertutor, or some one claiming to represent the minors, can attack the report of the experts fixing the value of the property to be adjudicated, and the judgment adjudicating same.

7th. That all of the proceedings leading up to the judgment being regular, same cannot be attacked in the absence of a charge of fraud.

The idea sought to be conveyed by the Lottery Company is that their shares of stock are worth a large premium in the market, and in cash ; and that, instead of the 108 shares that are held in indivision by the widow and heirs of Boullemet only being worth $16,200, they are now, and were at the time, worth $54,000 ; and that the interest of the minors amounts to $36,000, instead of $13,662 76.

The question presented is an equitable rather than a legal one.

The provisions of the Code are : " Whenever the father or mother of a minor has property in common with him, they each can cause it to be adjudicated to them, either in whole or in part, at a price of an estimation made by experts appointed and sworn by the judge, after a family meeting duly assembled, shall have declared that the adjudication is for the interest of the minors, and the undertutor shall have given his consent thereto." R. C. C. 343 ; 5 Ann. 122, Succession of Hebert.

In Orr vs. Thomas, 3 Ann. 582, our predecessors said on this subject:

"A judicial adjudication of community property made to the surviving husband, under proceedings before a court of competent jurisdiction, in which the minor heirs were represented by their undertutor, will not be annulled for *informalities anterior* to the decree of adjudication.

"The minors being represented by their undertutor, the judgment of adjudication is conclusive as to the *facts* on which it rests, *until corrected on appeal,* or annulled in a *direct* action."

It cannot be fairly argued that so great a disparity in value as alleged in the instant case is a mere *informality*; nor can it it be said that the Lottery Company have *appeared* in this cause without interest.

They appear in answer to plaintiff's rule and for the purpose of bringing to the attention of the court a fact of material importance to the minors, and possibly to themselves; and it is substantiated by the judicial admission of the company, and the uncontradicted testimony of two witnesses who are professedly familiar with the value of its stock.

No objection was urged to the affidavits on account of their being *ex parte.*

The proof furnised by the Boullemet *mortuaria* is not of the satisfactory character that evidence contradictorily taken, is.

Such proceedings are too frequently taken " as a matter of course"— simply as routine business, and not carefully weighed or properly inspected. We are, it is true, not justified, from anything in the record, to pronounce such judgment in this case; but if the testimony of the Lottery Company is to-be taken into account—and we think it is—it inevitably creates this impression.

While it is, no doubt, true that the undertutor is a very worthy and responsible person, and devoted to the interest of his grandchildren, yet it is within the range of probability that he was unaware that so large a value was placed upon, or could be obtained for this Lottery stock. We are unwilling to declare that he has been unfaithful, and we cannot consent to deprive him of the opportunity of investigating the value of this stock, and of testing the sincerity of the company's offer " of $500 per share, payable cash."

We regard the rule to show cause, taken on the Lottery Company, as a necessary step in the judicial proceedings to complete the adjudication to Mrs. Boullemet. The stock was not sold at public auction.

It had not been transferred by authentic act.

---

The judgment of homologation of the *proces verbal* of the delibera-
tions of the family meeting was *ex parte*. It is not such a final judg-
ment as will conclude investigation. We think the ends of justice
will be best subserved by an affirmance of the judgment appealed from
and it is ordered.

Judgment affirmed.